UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL MELVIN, et al.<br><br>Plaintiffs,<br><br>v.<br><br>JAMES F. KENNEY, et al.<br><br>Defendants. | Civil Action No. 20-3529 |

**REPLY IN SUPPORT OF CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO RULE 12(B)(6), OR, IN THE ALTERNATIVE, MOTION TO STRIKE IN PART PURSUANT TO RULE 12(F) AND MOTION FOR A MORE DEFINITE STATEMENT PURSUANT TO RULE 12(E)**

On July 19, 2020, Plaintiffs filed a Complaint against Defendants Philadelphia Mayor James Kenney, District Attorney Larry Krasner, Police Commissioner Danielle Outlaw, and former Police Commissioner Richard Ross (the "City Defendants") in connection with Plaintiffs' termination from the Philadelphia Police Department (hereinafter "PPD") for a variety of posts that Plaintiffs made on social media that were racist, Islamophobic, celebrated violence and vigilante justice, and demonstrated lack of respect for due process. In the Complaint, Plaintiffs alleged violations of the First, Second, and Fourteenth Amendments of the United States Constitution under 42 U.S.C. § 1983 (Counts I, II, III), Conspiracy to deprive Plaintiffs of their Civil Rights under 42 U.S.C. § 1985 (Count IV), and state court tort claims for Defamation (Counts V-VII), Intentional Infliction of Emotional Distress (Count VIII), and Invasion of Privacy (Counts IX-X). On November 2, 2020, the City Defendants filed the subject Motion to Dismiss Plaintiffs' Complaint Pursuant to Rule 12(b)(6), or in the Alternative, Motion to Strike in Part Pursuant to Rule 12(f) and Motion for a More Definite Statement Pursuant to Rule 12(e) (hereinafter the "Motion"). ECF No. 10. Plaintiffs failed to timely respond to the Motion, and

1

this Court dismissed the Complaint on November 25, 2020. ECF No. 12. On November 27, 2020, Plaintiffs filed a Motion to Set Aside dismissal, which the Court later granted. ECF Nos. 14, 20. Upon the reopening of this case, City Defendants hereby file this reply memorandum in support of the Motion.

## ARGUMENT

1. **The entire Complaint lacks plausibility.**

In their response, Plaintiffs offer no new arguments or clarifications that absolve their Complaint of its basic deficiencies and vitriol. At bottom, the Complaint is a foundationless manifesto presenting no plausible factual allegations against any of the City Defendants. It converts a dispute between employer and employees into a sprawling—yet wholly unsupported—city-wide conspiracy of political retribution. The spurious nature of the Complaint alone justifies its dismissal.

2. **Plaintiffs' claims that City Defendants acted together "in concert" fails to meet the requirements that federal civil rights clams must ascribe specific conduct to individual defendants; nor can Plaintiffs sustain their conspiracy claims based on unsupported assumptions.**

Plausibility concerns aside, the Complaint fails to meet even the most basic technical pleading requirements. With respect to all of Plaintiffs' federal civil rights claims (Counts I-IV), Plaintiffs impermissibly lumped multiple defendants together and ascribed all offending conduct to them in the collective. Plaintiffs' bald repetitions that Defendants worked together "in concert" is the exact type of conclusory or generic reference insufficient to survive a motion to dismiss. *See, e.g.*, *Johnson v. Unknown Det. Phila. Police*, No. 20-CV-4985, 2020 WL 7384883, at * 2 (E.D. Pa. Dec. 16, 2020) (Younge, J.) (dismissing Section 1983 claims where plaintiff failed to make any allegations "describing how any specific individuals were personally responsible for any of the alleged constitutional violations"). Moreover, Plaintiffs' assumption

that the City Defendants conspired together because they are high ranking City officials and "can be reasonably expected to be in constant communication and work together closely" is insufficient to show an actual meeting of the minds necessary to form a conspiratorial agreement. *Nanavati v. Burdette Tomlin Mem'l Hosp.*, 857 F.2d 96, 120 (3d Cir. 1988) (allegations of interactions or "frequent relations" between alleged conspirators are insufficient to infer an illegal agreement); *see also, e.g.*, *Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 944, 948-49 (3d Cir. 2019) (allegations of conspiracy must be plausible, not merely "conceivable" and based on suspicion); *Lee v. Abellos*, No. CIV.A. 13-0486, 2014 WL 6987414, at *19 (E.D. Pa. Dec. 10, 2014) (Plaintiff must plead sufficient facts to infer an agreement to act or concerted activity by the defendants alleged to have engaged in the conspiracy; merely asserting that the defendants "act[ed] in concert and conspiracy" is insufficient).[1]

### 3. Plaintiffs fail to plead facts beyond a formulaic recitation of the elements of a cause of action.

Plaintiffs' claims otherwise fail because they offer nothing more than a formulaic recitation of the elements of the causes of action. Because the Complaint contains only conclusory allegations, it does not satisfy the requirement that the Complaint contain a short and plain statement of a cause of action. *Johnson*, 2020 WL 7384883, at * 1 ("[A] complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8."). While this deficiency applies to all of Plaintiffs' causes of action (and are described with particularity in the

---

[1] Plaintiffs attempt to infer conspiracy between Outlaw/Ross, Kenney, and Krasner based on the fact that Defendant Krasner did not discipline one of his employees for a single Facebook post Plaintiffs deemed to be offensive. To the extent that this can be viewed as "parallel conduct," (which the City Defendants do not concede), case law instructs that parallel conduct alone cannot sustain a cause of action for conspiracy. *See, e.g.*, *Rivera v. Chester Cty.*, No. 15-5609, 2017 WL 1150622, at *32 (E.D. Pa. Mar. 28, 2017) (cannot infer conspiracy on mere fact that defendants acted in parallel); *D'Altilio v. Dover Twp.*, No. 1:06-CV-1931, 2007 WL 2845073, at *11 (M.D. Pa. Sept. 26, 2007).

Motion to Dismiss), these deficits are most apparent with respect to their First Amendment claim. In this regard, Plaintiffs should have, at minimum, attached or specifically referenced the Facebook posts ascribed to them by the Plain View Project. Instead, they would have this Court blindly accept their conclusion that "none of the Plaintiffs' social media posts were racist, homophobic, Islamophobia [sic], or offensive at all." Response at p. 2. By doing this, Plaintiffs impermissibly attempt to pass their pleading burden onto the City Defendants, claiming that they failed to specify which of their social media posts formed the basis of their discipline. *Id.* Even if this were true (which the City Defendants do not concede), each of Plaintiffs' First Amendment claims find their factual basis in the social media posts attributed to them by the Plain View Project. These posts are publicly available on the Plain View Project database and Plaintiffs should have specifically referenced them in (or attached them to) the Complaint. Because they did not do this, they failed to allege any nonconclusory facts to show that they engaged in private citizen speech on a matter of public concern—elements that are crucial to sustain a First Amendment claim. *See* Motion at pp. 13-14.[2] The City Defendants should not be obliged to fill in the gaps at this stage, especially where the speech at issue is within Plaintiffs' possession.[3]

---

[2] For these same reasons, Plaintiffs failed to state a claim for Defamation (Counts V-VII) and Invasion of Privacy (IX-X) because the Plain View Project posts are the "defamatory communication" and "private facts" elements of the Defamation and Invasion of Privacy claims, respectively.

[3] As specifically addressed in in the Motion, the remainder of Plaintiffs claims for Second and Fourteenth Amendment violations, as well as intentional infliction of emotional distress, do nothing more than parrot the elements of the cause of action. Moreover, with respect to the intentional infliction of emotional distress claim, Plaintiffs even concede that they do not allege actual physical harm which is a required element of this claim; rather, they can only allege that the City Defendants' conduct caused them "severe emotional distress" and left them "vulnerable to physical attack and even death by radical leftists such as ANTIFA who want nothing more than the death of police officers." Response at pp. 10-11.

### 4. Despite Plaintiffs' bald allegations of "illegal" conduct, the City Defendants are still entitled to high public official immunity.

As set forth in the Motion, each City Defendant is a high public official immune from each of Plaintiffs' state law claims. Even if the actions were malicious or the product of willful misconduct (which the City Defendants do not concede)—the City Defendants are still entitled to immunity. *See, e.g.*, *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 425 (E.D. Pa. Sept. 6, 2000) ("Although ordinary local agency employees can be held liable if they engaged in crime, actual fraud, actual malice or willful misconduct … high public officials accused of defamation enjoy absolute immunity even where willful misconduct is alleged." (citing *Lindner v. Mollan*, 677 A.2d 1194 (Pa. 1996)). Further, Plaintiffs provide no specific instances of action taken by the City Defendants that is not closely related to their official prerogatives as Mayor, District Attorney, and Police Commissioner. *Smith v. Borough of Dunmore*, 633 F.3d 176, 181-82 (3d Cir. 2011) (an action is taken in the course of the official's duties or powers where the action is "closely related" to the official's duties); *see also Feldman v. Hoffman*, 107 A.3d 821, 829 (Pa. Commw. Ct. 2014) (actions fell within scope of official's duties where allegations were "directly related to decisions he made while acting in his official capacity as a high public official").

### 5. The racist, anti-Semitic, and misogynistic averments in the Complaint speak for themselves.

Lastly, in their Response, Plaintiffs double down on their myriad racist, anti-Semitic, and misogynistic language, claiming that none of the "examples" cited by the City Defendants "contain any such language." Response at p. 11. Specific language aside, it is in and of itself anti-Semitic to allege that Defendant Krasner's Jewish faith (and claiming that he has betrayed his own "Judeo heritage") somehow has any bearing to his role and decisions as District Attorney. Plaintiffs

5

should not need to be told this. With respect to the remaining allegations of racism and misogyny, the Complaint speaks for itself.

## CONCLUSION

Based on the foregoing and for the reasons set forth in the Motion, the Court should dismiss the Complaint, or, *at a minimum*, require Plaintiffs to amend their Complaint to cure its basic pleading deficiencies and eliminate all racist, anti-Semitic, and misogynistic references.

Respectfully submitted,

**CITY OF PHILADELPHIA
LAW DEPARTMENT**

/s/ Brian Matthew Rhodes
BRIAN MATTHEW RHODES
Senior Attorney

Dated: January 6, 2021

# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL MELVIN, et al.** <br><br> **Plaintiffs,** <br><br> v. <br><br> **JAMES F. KENNEY, et al.** <br><br> **Defendants.** | : <br> : <br> : <br> : <br> : **Civil Action No. 20-3529** <br> : <br> : <br> : <br> : |

I hereby certify that on the date listed below the foregoing Reply was filed electronically and made available for download and viewing.

                                              Respectfully submitted,

                                              **CITY OF PHILADELPHIA**
                                              **LAW DEPARTMENT**

                                              /s/ Brian Matthew Rhodes
                                              BRIAN MATTHEW RHODES
Dated:  January 6, 2021                  Assistant City Solicitor